UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FLOYD E. KOHN,

                Petitioner,                      Case No. 1:16-cv-1375

v.                                          Honorable Gordon J. Quist

WILLIE SMITH,

                Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Floyd E. Kohn is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility (LRF), in Muskegon Heights, Michigan. On September 12, 2012, a Kalamazoo County Circuit Court jury, found Petitioner guilty of one count of possession of lab equipment known to be used to manufacture methamphetamine, MICH. COMP. LAWS § 333.7401c. The jury acquitted Petitioner of one count of the use of a motor vehicle without authority, MICH. COMP. LAWS § 750.414. On October 15, 2012, the court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to a term of imprisonment of 5 to 40 years.

On November 23, 2016, Petitioner filed his habeas corpus petition raising 4 grounds for relief, as follows:

I.      No proper investigation, no investigation at all, of the client attorney breakdown even after 16 different reasons given in open court, including counsel's ostensible conflict of interest.

II.     Lack of evidence, substantial or otherwise, regarding possession or ownership of the bottle of supposed methamphetamine, put the burden of proof on the defense.

III.    Withholding favorable evidence from the jury in the form of a witness, Officer McCall, who stated in his report that he found the bottle of supposed methamphetamine on the driver's side of the vehicle, not the passenger's side where Petitioner was seated.

IV.     New evidence in the form of national/statewide database for pseudoephedrine, the main component of methamphetamine, in which Petitioner is conspicuously absent.

(Pet., ECF No. 1, PageID.6-10.)  Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they are procedurally defaulted or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are procedurally defaulted or meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

Petitioner was charged with two offenses.  Both offenses related to a Toyota Tacoma pickup truck owned by Barbara Williams.  According to Ms. Williams, on September 14, 2012, at approximately 2:00 a.m., she was driving her pickup in Kalamazoo County.  (Trial Tr. I, ECF No. 11-4, PageID.406-409.)  Ms. Williams, along with her boyfriend, Ryan Wilson, were driving Petitioner and his friend, Tom Peffley, to Petitioner's sister's house.  (*Id.*)  She was pulled over by police.  Ms. Williams was

2

arrested because she owed back child support.  (*Id*.)  Mr. Wilson and Mr. Peffley were also arrested, for possession of controlled substances. (*Id*., PageID.406-409, 413.)

Ms. Williams testified that she gave Petitioner the keys to the truck and permission to push it to his sister's house, where she expected it to remain until her release from jail.  (*Id*., PageID.409.)  She knew Petitioner had no license and that he did not know how to drive a vehicle with a manual transmission.  (*Id*.)  She did not give Petitioner, or anyone else, permission to drive the car.  (*Id*.)

Ms. Williams was released from jail ten days later.  (*Id*., PageID.410.)  She went to Petitioner's sister's house, but the truck was not there. (*Id*.)  She went to her apartment, but the truck was not there.  (*Id*.)  She called the police to report it stolen. (*Id*.)  The apartment had been broken into and the door was unlocked.  (*Id*., PageID.418-420.)  Ms. Williams' belongings were missing and there were multiple "meth labs" in the apartment that had not been there before she was arrested.  (*Id*., PageID.420, 425.)

That evening, the police found the truck and stopped it at a Shell gas station in Kalamazoo, Michigan.  (*Id*., PageID.410-411.)  The truck was full of Ms. Williams' belongings that had been taken from her apartment.  (*Id*.)  The police also found a "meth lab" in the truck.  (*Id*., PageID.411-412.)  Ms. Williams claimed the "meth lab" was not hers.  (*Id*.)

Officer Charles Treppa was the Kalamazoo Public Safety Officer who had pulled Ms. Williams over on September 14.  (*Id*., PageID.428-429.)  He testified that

he and other officers searched the vehicle and there was not a "meth lab" in the truck when he arrested Ms. Williams.  (*Id*., PageID.420-430.)

Sergeant Ronald Boling responded to the breaking and entering call at Ms. Williams' apartment on September 24, 2012.  (*Id*., PageID.436-437.)   When he arrived, he learned that Ms. Williams' claimed her truck had been stolen as well.  (*Id*.) That information was relayed by the dispatch center and while Sergeant Boling was still at the apartment, an officer reported that the vehicle had been located.  (*Id*.) Sergeant Boling took Ms. Williams to that location to retrieve her truck and her belongings.  (*Id*., PageID.440.)

Officer Bryan Martin testified that he participated in the arrest of Petitioner at the Shell station.  He had been following the Toyota Tacoma, because he suspected it was the stolen vehicle, when it pulled into the Shell station.  (*Id*., PageID.456-457.) Officer Martin testified that Thomas Peffley was driving the vehicle; Petitioner exited the vehicle from the passenger side.  (*Id*., PageID.458-459.)  Mr. Aaron Root was sitting in the back seat.  (*Id*., PageID.459.)  Once the occupants of the truck and been secured in separate police cruisers, officers inspected the vehicle.  (*Id*., PageID.460.) They discovered an active "meth lab" underneath the front seat.  (*Id*.)  Additional officers with experience dismantling "meth labs" were dispatched to the scene.  (*Id*., PageID.461.)

Officer Martin transported Petitioner to police headquarters for processing. (*Id*., PageID.463.)  Petitioner and Mr. Peffley were reunited in the booking room.  (*Id*.)

After a few moments of hushed conversation between the two, Petitioner approached

Officer Martin and informed him that the "meth lab" was his.  (*Id.*, PageID.464.)

Officer Stephen Seiser was one of the officers with experience dismantling

"meth labs" who responded to the Shell station.   (Trial Tr. II, ECF No. 11-5,

PageID.493.)  When Officer Seiser arrived at the station, other officers informed him

the "meth lab" was under the front passenger seat of the vehicle.  (*Id.*, PageID.494.)

Officer Seiser explained the danger inherent in the situation:

> First of all, the location where we were at was a gas station.  Obviously
> with gas fumes and gasoline, it's a very explosive situation.  The other
> problem is that this meth lab was pressurized.  I immediately could feel
> when I'd pick up the bottle that it was pressurized, therefore, it is my
> belief that they were actually cooking the meth in the one-pot container.
> What that means is that they were actively shaking the bottle in order
> to create a reaction and also relieving the pressure of the pop bottle in
> order to continue the reaction.  And if that bottle is not–it's called
> burping which it means releasing some of the gas that's in it.  If that's
> not done, then the bottle can fail, therefore, releasing Coleman fuel and
> lithium metal and the lithium metal will react to the humidity in the air
> and it'll catch fire.  So that vehicle could have very easily caught on fire,
> especially with all of the plastics in the vehicle.  It would have taken
> very little for that whole vehicle to be fully involved in flames and,
> therefore, possibly catch the gas pumps on fire.

(*Id.*, PageID.496.)

Officer David Miller was the other responding officer with experience

dismantling "meth labs."  (*Id.*, PageID.521-522.)  Officer Miller explained the

function of a "one-pot meth lab."  (*Id.*, PageID.513-520, 524-525.)  The "meth lab" in

the Toyota Tacoma was simply a clear one-liter bottle with the necessary

ingredients inside.  (*Id.*, PageID.523.)  Officer Miller testified that it would have

been impossible to be in the vehicle and not know that there was something going

on because of the chemical odors.  (*Id.*, PageID.526.)  Moreover, according to Officer

Miller, when the "meth lab" is reacting, the cook would have to tend to it almost nonstop.  (*Id.*, PageID.550-551.)  Officer Miller, wearing protective gear, transported the "meth lab" across the street to a vacant lot where he continued to shepherd the chemical reactions to prevent them from overpressurizing the bottle, which might cause it to explode, or reacting too quickly, which might cause it to burn through the bottle. (*Id.*, PageID.528.)  Officer Miller testified that, given the stage of the reaction when he had the bottle, it was "very fresh."  (*Id.*, PageID.551.)  He opined that it had been put together within fifteen minutes of its discovery by the officers. (*Id.*)  Officer Miller also testified that it would have been extremely difficult for the driver to manage the reaction process.  (*Id.*, PageID.554-555.)

Petitioner testified as well.  He denied any connection to or knowledge of the "meth lab."  He also claimed he did not use the truck other than as authorized by Ms. Williams.  He claims he was in the process of returning it to her, at her request, when the officers stopped the truck at the Shell station.

The jury deliberated for a few hours before returning its verdict of guilty on the count relating to the meth lab and not guilty on the count relating to unauthorized use of the pickup truck.  (Trial Tr. III, ECF No. 11-6, PageID.682-683.)

Petitioner filed a direct appeal of his conviction in the Michigan Court of Appeals.  His brief, filed with the assistance of counsel, raised three issues:

> I.    DEFENDANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED (1) WHEN POLICE WITNESSES ON SEVERAL OCCASIONS WERE ALLOWED TO EXPRESS THEIR OPINIONS THAT DEFENDANT WAS GUILTY, ON ONE OCCASION BECAUSE

HE HAD INVOKED HIS RIGHT TO REMAIN SILENT AND (2) WHEN THE PROSECUTOR COMMITTED MISCONDUCT IN ELICITING A POLICE WITNESS' OPINION THAT DEFENDANT WAS GUILTY, CONTRARY TO HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS. ADDITIONALLY, TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.  US CONST. AM. V, VI, XIV.

II.    DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFLICT FREE COUNSEL WAS VIOLATED WHEN THE TRIAL COURT REFUSED TO REMOVE APPOINTED TRIAL COUNSEL WHO WAS SIMULTANEOUSLY RUNNING FOR PROSECUTOR IN AN ADJOINING COUNTY.

III.    REVERSIBLE ERROR OCCURRED WHEN THE PROSECUTOR COMMITTED MISCONDUCT BY IMPEACHING DEFENDANT WITH ARRESTS THAT DID NOT RESULT IN CONVICTIONS.

(Pet'r's Br. on Appeal, ECF No. 11-12, Page ID.738.)  Petitioner also filed a pro per

supplemental brief, raising the following additional issues:

1)    Violation of Due Process/cumulative effect of error[.]

2)    Exposed Facto Clause "1963" less than standard evidence[.]

3)    Search and seizure/false police report[.]

4)    Prosecutorial Misconduct (wide range) and major[.]

5)    Right to be present at trial for requested (by court) psychiatric evaluation[.]

6)    MCL 333.7527 destroying drug evidence and not taking the defense at all.  Inexcusable neglect or deliberate deception of law enforcement[.]

7)    New evidence in the form of state and national Sudafed database[.]

(Pet'r's Supp. Br. on Appeal, ECF No. 11-12, PageID.766.)  In an unpublished opinion issued on February 19, 2015, the Michigan Court of Appeals affirmed the conviction. (Mich. Ct. App. Op., ECF No. 11-12, PageID.727-734.)

Petitioner sought leave to appeal to the Michigan Supreme Court, generally raising the same issues presented to the Michigan Court of Appeals, together with new claims:

> New Issue I.         The prosecutor withheld favorable evidence in the form of the testimony of Officer McCall who reported he found the "meth lab" on the driver's side of the vehicle.
>
> New Issue II.        Speedy trial violation.
>
> New Issue III.       The Kalamazoo Department of Public Safety let an unlicensed driver take possession of a vehicle and drive it away.

(Pet'r's App. for Leave to Appeal, ECF No 11-14, PageID.957-958.)  The supreme court denied leave to appeal on September 9, 2015.  (Mich. Ord., ECF No. 11-14, PageID.950.)  Petitioner reports that he filed a petition for certiorari to the United States Supreme Court raising the issues he raised in the state appellate courts plus a new issue regarding jury instructions.  (Pet., ECF No. 1, PageID.3.)  The petition was denied on September 9, 2015.  (*Id.*)

Petitioner then returned to the trial court, filing a motion for relief from judgment raising 11 issues, including all of the issues he raises in his habeas petition.  As discussed in detail below, some of Petitioner's post-judgment motion issues had been previously raised during Petitioner's direct appeal at both appellate courts; other issues had been raised at only the supreme court.  (*Compare* Pet'r's Mot. for Relief from J., ECF No. 11-9, PageID.714-719; Pet'r's Appeal Br., ECF No.

11-12, PageID.738; Pet'r's Standard 4 Br., ECF No. 11-12, PageID.769-772; Pet'r's Appl. for Leave to Appeal, ECF No. 11-14, PageID.952-958, 961-975.)  In an opinion and order dated January 15, 2016, and a supplemental order dated March 30, 2016, the trial court denied Petitioner's motion because Petitioner had either (1) previously raised the issues on appeal and lost; or (2) failed to establish cause for failing to raise the issues on appeal or prejudice.  (Op. and Order, ECF No. 11-10; Supp. Op. and Order, ECF No. 11-11.)  Petitioner filed an application for leave to appeal those decisions in the Michigan Court of Appeals.  That court denied leave by order entered September 28, 2016.  (Mich. Ct. App. Ord., ECF No. 11-13, PageID.811.)  Petitioner did not seek leave to pursue the matter further in the Michigan Supreme Court.  (Aff. of Mich. Supreme Ct. Clerk, ECF No. 11-15.) Instead, he filed his petition in this Court.

## II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so

10

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Sixteen reasons to remove defense counsel

Petitioner contends the trial court erred when it failed to remove Petitioner's trial counsel after Petitioner provided sixteen reasons to permit her to withdraw.  At the hearing on counsel's motion to withdraw, Petitioner presented his reasons for removing his counsel:

1.    Counsel informed him that if he waived the preliminary examination she would try to get a deal with no prison time under a Cobbs agreement.

2.    Counsel has not visited him in jail.

3.  Counsel does not have his best interest at heart because she is running for prosecutor in Hastings, Michigan.

4.  She would not request a polygraph for Petitioner, move for dismissal of the charges, or get a quick and speedy trial.

5.  She would not bypass the prosecutor and communicate directly with the judge to get a no-prison-time plea deal.

6.  He did not trust her ambition to be a prosecutor.

7.  He did not get his discovery until two weeks before the first scheduled trial.

8.  She ignores details and evidence that point directly to his innocence. She is hindering his case.

9.  She would not come up with savvy, enlightening ways to push evidence through or investigate things properly.  By way of example, Petitioner, not his counsel, discovered that Officer McCall reported the "meth lab" was on the driver's side of the vehicle even though everyone else said it was the passenger side.

10. She would not subpoena Tom Peffley, Aaron Root, or Barbara Williams.

11. She will not bring new evidence to the attention of the Prosecutor or Jeffrey Fink, i.e., a letter from the driver of the truck stating that Petitioner is innocent.

12. She will not contact Vernon Oakley of Internal Affairs regarding the suppression of evidence, the erasing of DVR's, the unlawful stop, or the initial dropping of the charge for several months.

13-15. He wrote to the Attorney Grievance Commission because her performance is so sub-par. He is being railroaded.  He is innocent.  The case should be dropped.

16. He was thrown in the hole and harassed by staff at the county jail. She did nothing.  They refused to approve him for drug court.  She did nothing.

(Mot. Hr'g Tr., ECF No. 11-3, PageID.254-261.)  Petitioner's counsel explained her reasons for proceeding as she had.  (*Id.*, PageID.262-265.)  The trial court concluded that there were some differences between Petitioner and his counsel with regard to strategy, but no fundamental breakdown in the relationship, and no particular shortcoming in counsel's performance; accordingly, the court denied relief.  (*Id.*, PageID.265-266.)

In his court of appeals briefing, Petitioner's complaints regarding his counsel took a different form.  In the brief filed with the assistance of counsel, the issue was whittled down to the conflict of interest arising from her candidacy for prosecutor in a neighboring county.  (Pet'r's Appeal Br., ECF No. 11-12, PageID.755-758.) Petitioner then expanded his claims of ineffective assistance in his Standard 4 brief[1] to include: (1) counsel would not obtain a polygraph test; (2) counsel would not obtain or present as evidence the national or statewide pseudoephedrine databases; (3) counsel did not seek mistrial or dismissal based on lack of evidence; (4) counsel would not ask the officer if it was protocol to let an unlicensed driver take or drive a truck. (Pet'r's Std. 4 Br., ECF No. 11-12, PageID.769.)

In his pro per application for leave to appeal in the Michigan Supreme Court, Petitioner returned to all sixteen of the issues he raised in the trial court.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-14, PageID.961-962.)    The ineffective assistance issues resurfaced in roughly that form in Petitioner's motion or relief from judgment.  (Mot. for Relief from J., ECF No. 11-9, PageID.714-719.)  To the extent the

---

[1] Standard 4 permits an appellant to file a brief *in propria persona* covering issues the appellant wants to raise on appeal even though his counsel does not. Mich. Admin. Order No. 2004-6.

claims had not been raised in the Michigan Court of Appeals and resolved by that court's opinion, the trial court refused to consider them because Petitioner had failed to establish cause for failing to raise them or resulting prejudice.  (Supp. Op. and Order, ECF No. 11-11.)

To summarize, Petitioner raised five ineffective assistance issues in the Michigan Court of Appeals: conflict of interest; no polygraph; no investigation or presentation of pseudoephedrine databases; no motion for mistrial or dismissal; and failure to question regarding police protocol.  The trial court refused to consider any additional ineffective assistance issues because Petitioner had failed to raise them in the Michigan Court of Appeals on direct appeal and had not established cause for his failure to do so.

A.    Procedural default

Other than the five ineffective-assistance issues referenced in the immediately preceding paragraph, Petitioner's ineffective assistance of counsel claims have been procedurally defaulted.  When a state-law default prevents further state consider-ation of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal

14

habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  The last reasoned opinion in Petitioner's case is the trial court's March 30, 2016, supplemental opinion and order on Petitioner's motion for relief from judgment (ECF No. 11-11).  The trial court divided Petitioner's motion issues into two categories: those issues that had been raised in the Michigan Court of Appeals; and those issues that Petitioner had not raised in the Michigan Court of Appeals.  The trial court denied relief with respect to the former category of issues under MICH. CT. R. 6.508(D)(2), which provides "The court may not grant relief to the defendant if the motion . . . alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding . . . unless a retroactive change in the law has undermined the prior decision . . . ."  *Id*.; (Supp. Op. and Order, ECF No. 11-11, PageID.724-725.) The trial court denied relief with respect to the latter category of issues under MICH. CT. R. 6.508(D)(3), which provides "The court may not grant relief to the defendant if the motion . . . alleges grounds for relief . . . which could have been raised on appeal from the conviction and sentence . . . unless the defendant demonstrates . . . good cause for the failure to raise such grounds . . . and  . . . actual prejudice for the alleged irregularities . . . ."  *Id*.; (Supp. Op. and Order, ECF No. 11-11, PageID.725.)  The

Michigan Court of Appeal denied Petitioner's application for leave to appeal the trial court's decision because "defendant ha[d] failed to establish that the trial court erred in denying the motion . . . ."  (Mich. Ct. App. Op., ECF No. 11-13, PageID.811.) "[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  *Ylst*, 501 U.S. at 803.

The procedural default bar, however, applies only if MICH. CT. R. 6.508(D)(3) is an adequate and independent state law procedural rule.  A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default.  *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000).  Because Mich. Ct. R. 6.508(D) was enacted in 1989 and Petitioner's conviction and appeals took place more than twenty years thereafter, MICH. CT. R. 6.508(D)(3) was a "firmly established" procedural rule for purposes of Petitioner's action.  *See Luberda,* 211 F.3d at 1007; *Rogers*, 144 F.3d at 994.

When a petitioner has procedurally defaulted in the state courts, the federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal

16

violation or can show actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).  To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Petitioner has not attempted to explain his failure to raise in the Michigan Court of Appeals the ineffective-assistance issues that he excluded from his Standard 4 brief in that court.  He was aware of them.  He identified the issues during the hearing on counsel's motion to withdraw.  He raised them in the Michigan Supreme Court.  His failure to raise the issues in the Michigan Court of Appeals remains unexplained.

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).  Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).  This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329).  As discussed fully below in connection with issues II and IV, Petitioner has not

made the required showing of innocence.  Accordingly, I conclude that, other than the five ineffective assistance of counsel issues discussed below, Petitioner's ineffective assistance of counsel claims are procedurally defaulted.

    B. <u>Conflict of interest</u>

  Petitioner contends that his trial counsel's representation was hampered by her candidacy for prosecutor in a neighboring county.  He does not link a specific instance of ineffective assistance to the conflict.  Petitioner's trial counsel was an unopposed candidate for the office of Barry County Prosecutor during 2012.  She was elected as Barry County Prosecutor with over 97% of the votes cast for prosecuting attorney just three weeks after Petitioner was sentenced.[2]

  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350

---

[2]                                     *See* http://www.barrycounty.org/departments_and_officials/officials/county_clerk/election_results.php (follow 2012 November Election Summary Report hyperlink, last visited Feb. 5, 2018).

U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996)

(holding that counsel's strategic decisions were hard to attack).  The court must

determine whether, in light of the circumstances as they existed at the time of

counsel's actions, "the identified acts or omissions were outside the wide range of

professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court

determines that counsel's performance was outside that range, the defendant is not

entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

A conflict of interest claim is a specific type of ineffectiveness claim.  *Thomas*

*v. Foltz*, 818 F.2d 476, 480 (6th Cir. 1987).  Certain ineffective assistance claims based

on conflict of interest are "examined under a slightly different standard from that

used in a traditional ineffectiveness claim."  *Id.*  The Supreme Court summarized that

"slightly different" standard in *Strickland*, as follows:

> In *Cuyler v. Sullivan*, 446 U.S., at 345–350, the Court held that
> prejudice is presumed when counsel is burdened by an actual conflict of
> interest.  In those circumstances, counsel breaches the duty of loyalty,
> perhaps the most basic of counsel's duties.  Moreover, it is difficult to
> measure the precise effect on the defense of representation corrupted by
> conflicting interests.  Given the obligation of counsel to avoid conflicts of
> interest and the ability of trial courts to make early inquiry in certain
> situations likely to give rise to conflicts, *see, e.g.,* FED. RULE CRIM. PROC.
> 44(c), it is reasonable for the criminal justice system to maintain a fairly
> rigid rule of presumed prejudice for conflicts of interest.  Even so, the
> rule is not quite the per se rule of prejudice that exists for the Sixth
> Amendment [actual or constructive denial of counsel] claims mentioned
> above.  Prejudice is presumed only if the defendant demonstrates that
> counsel "actively represented conflicting interests" and that "an actual
> conflict of interest adversely affected his lawyer's performance." *Cuyler*
> *v. Sullivan, supra*, 446 U.S., at 350, 348, (footnote omitted).

*Strickland*, 466 U.S. at 692.

The Sixth Circuit has concluded that there is no clearly established federal law applying the "slightly different" standard to any conflict of interest situations other than multiple concurrent representations that conflict. *Stewart v. Wolfenbarger*, 468 F.3d 338, 350-351 (6th Cir. 2006).   The *Stewart* court based its limitation of the *Sullivan* standard's application on the Supreme Court's decision in *Mickens v. Taylor*, 535 U.S. 162 (2002).  In *Mickens*, the Supreme Court cautioned that *Sullivan* did not clearly establish a standard other than *Strickland* for an ineffectiveness claim based on any conflict other than multiple concurrent representations. *Mickens,* 535 U.S. at 175.  The *Mickens* Court identified several situations where the Courts of Appeals had improperly invoked the *Sullivan* standard, including the circumstance where the conflict arose from the defense counsel's prospect of a job with the prosecutor's office. *Mickens*, 535 U.S. at 174.  That is the circumstance here.  Accordingly, Petitioner is obligated to demonstrate prejudice under *Strickland*.

As the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a

20

*Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562

U.S. at 102).

The Michigan Court of Appeals rejected Petitioner's conflict of interest claim:

> A defendant has a constitutional right to counsel. *People v Meissner*, 294 Mich App 438, 459; 812 NW2d 37 (2011). However, an indigent defendant is not entitled to the appointment of counsel of his choosing. *Strickland*, 293 Mich App at 397. "Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause exists where a legitimate difference of opinion develops between a defendant and his appointed counsel with regard to a fundamental trial tactic." *Id.* (quotation omitted). A defendant's right to counsel includes the right to effective assistance of counsel. *Meissner*, 294 Mich App at 459. A defendant is denied effective assistance if counsel had an actual conflict of interest that affected counsel's performance. *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998).

> In support of his claim, defendant relies on *People v Davenport*, 483 Mich 906; 762 NW2d 163 (2008), where the Supreme Court stated:

>> A presumption of prejudice exists when a defendant's former defense counsel joins the prosecutor's office that is pursuing the case against the defendant. MRPC 1.9(b), 1.10(b). Such a presumption may be overcome, however, if the prosecutor shows that the attorney who has a conflict of interest was properly screened out from "any participation in the matter." MRPC 1.10(b). . . .  [*Id.*]

>> *Davenport* is distinguishable from the present case. Defense counsel never switched sides. She represented defendant throughout the course of the lower court proceedings. In addition, during her representation of defendant, defense counsel was not associated with the Barry County prosecutor's office. She was only running for election. Accordingly, defendant's reliance on Davenport is misplaced, and he fails to establish an actual conflict of interest. The trial court therefore acted within its discretion in denying defendant's motion.

(Mich. Ct. App. Op., ECF No. 11-12, PageID.730.) The state appellate court concluded

that there was simply no conflict of interest. That determination is eminently

reasonable on the record. Moreover, it is entirely consistent with clearly established

21

federal law.  *Mickens*, 535 U.S. at 170 (Court held a "mere theoretical division of loyalties" was insufficient); *see also Cordell v. United States*, 193 F. App'x 479, 482 (6th Cir. 2006) ("'There is no violation where the conflict is . . . merely hypothetical.'"); *Moss v. United States*, 323 F.3d 445, 463-64 (6th Cir. 2003) ("[I]f the conflict is . . . merely hypothetical, there is no constitutional violation.").

C.    Failure to submit Petitioner for a polygraph examination

Petitioner claims his counsel rendered ineffective assistance when she failed to arrange for a polygraph examination of Petitioner.  The Michigan Court of Appeals did not expressly address this claim.  "Deferential review under [the] AEDPA applies only where the state court had adjudicated a claim on the merits."  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) (citing *Maples v. Stegall*, 340 F. 3d 433, 436 (6th Cir. 2003)).  Where the state court has not adjudicated a claim on the merits, the proper standard of review for questions of law and mixed questions of law and fact is *de novo*.  *Scott v. Houk*, 760 F.3d 497, 504 (6th Cir. 2014); *see also Durr*, 487 F.3d at 432; *Shaieb v. Burghuis*, 499 F. App'x 486, 497 n.3 (6th Cir. 2012).

Even on *de novo* review the claims fails because Petitioner has not shown how the failure to obtain a polygraph examination affected the trial's outcome.  Petitioner has not provided any evidence he would have passed a polygraph examination.  "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted).  Moreover, the results of a polygraph examination are inadmissible at trial under Michigan law.  *See People*

*v. Phillips*, 666 N.W.2d 657 (Mich. 2003); *People v. Jones*, 662 N.W.2d 376 (Mich. 2003).  Put simply, even if counsel erred by failing to subject Petitioner to a polygraph test, Petitioner cannot show the requisite prejudice.

> D.    <u>Failure to introduce evidence of pseudoephedrine databases</u>

Petitioner claims his counsel rendered ineffective assistance when she failed to investigate and introduce evidence regarding the absence of Petitioner's name on statewide and national databases relating to purchases or attempted purchases of pseudoephedrine.[3]  The Michigan Court of Appeals did not consider this issues in the context of an ineffective assistance claim; however, the state appellate court did review the issue in connection with Petitioner's contention that he was entitled to a new trial.  The court stated:

> Finally, defendant argues that he is entitled to a new trial based on newly discovered evidence.  He asserts that he has discovered since trial that his name is not in the national and state databases for purchases for pseudoephedrine products, a piece of evidence often relied upon in methamphetamine-related cases.  A new trial may be granted on the basis of newly discovered evidence.  *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).  However, one requirement to support a new trial is that "the new evidence makes a different result probable on retrial."  *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003).  Here, it is completely irrelevant whether defendant ever purchased any pseudoephedrine products; he was caught red-handed in the possession of a portable meth lab.

(Mich. Ct. App. Op., ECF No. 11-12, PageID.733-734.)

---

[3] The purchase of pseudoephedrine is regulated because it is used in the manufacture of methamphetamine; purchases and attempted purchases of pseudoephedrine are tracked in databases. *See, e.g., United States v. Masters*, 591 F. App'x 452 (6th Cir. 2015); *Hawkins v. Roggenbuck*, No. 1:14-cv-1191, 2017 WL 876380, *2 (W.D. Mich. Feb. 9, 2017).

The state appellate court's determination that the pseudoephedrine database evidence would be irrelevant to Petitioner's prosecution is purely a matter of state law.  As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry as to whether evidence is properly admitted or improperly excluded under state law 'is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'"  *Id.* at 67-68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Petitioner has failed to show that it is objectively unreasonable for counsel to forego the investigation or introduction of irrelevant evidence.  Moreover, Petitioner has failed to demonstrate that the outcome would have been any different if such irrelevant evidence had been admitted.  Petitioner's ineffective assistance claim based on the pseudoephedrine databases is, therefore, without merit.

E.    Failure to move for a mistrial or dismissal

Petitioner contends his counsel rendered ineffective assistance because she failed to move for a mistrial or dismissal of the charges.  Petitioner does not identify any grounds that would warrant a mistrial.  Moreover, as set forth fully below in § III, the prosecutor presented sufficient evidence to support Petitioner's conviction during the prosecutor's presentation of her case.  A motion to dismiss would have been futile.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden*

24

*v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### F. Failure to question police regarding protocol

Petitioner complains that his counsel should have questioned Officer Treppa about police protocol and the likely violation of protocol when Officer Treppa left Petitioner, an unlicensed driver, in possession of the Toyota pickup truck. (Pet'r's Standard 4 Br., ECF No. 11-12, PageID.769.) Even if it were objectively unreasonable for counsel to not ask the question urged by Petitioner, Petitioner cannot demonstrate prejudice because the prosecutor asked Officer Treppa the very question Petitioner contends his counsel should have asked:

Q    Okay. You understood that Floyd Kohn did not have a driver's license?

A    Yes.

Q    And is that protocol to give the keys to a person without a license?

A    Yes, as long as they're not driving the vehicle. And in this particular circumstance, it sounded like Barbara was making arrangements with Floyd to have him bring a licensed driver down to avoid her vehicle from being impounded that evening.

(Trial Tr. I, ECF No. 11-4, PageID.430.) So the jury was aware of the information. Moreover, Petitioner was found not guilty on the charge of unauthorized use of the truck. Petitioner has failed to demonstrate how defense counsel's failure to elicit testimony, testimony that had already been elicited, operated to Petitioner's detriment in any way.

### III.    Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [Court of Appeals'] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In the Michigan Court of Appeals, Petitioner raised his "sufficiency of the evidence" arguments under a heading challenging the constitutionality of his conviction as violative of the Ex Post Facto Clause.  (Pet'r's Standard 4 Br., ECF No. 11-12, PageID.769.)  The state appellate court resolved the claim as it was raised in the heading, and concluded there was no violation of the Ex Post Facto Clause.  (Mich. Ct. App. Op., ECF No. 11-12, PageID.731-32.)

Petitioner's argument regarding the sufficiency of the evidence is centered on all of the evidence that was absent: "no taped confession, no fingerprints, [and] no signed statements[.]"  (Pet'r's Standard 4 Br., ECF No. 11-12, PageID.769.)  But, the *Jackson* standard does not look to the evidence that was missing, or the evidence that supports the defense; it examines the evidence in support of the prosecution's position in a light most favorable to the prosecution.  Petitioner does not dispute that there was a "meth lab" in the pickup truck.  He simply claims it was not his—that he did not own or possess it.

The trial court instructed the jury regarding the element of possession as follows:

> The Defendant is charged with possessing a chemical and/or laboratory equipment that he knew or had reason to know was to be used for the purpose of manufacturing methamphetamine.  In order to convict the Defendant of this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt.

First, that the Defendant possessed a chemical or laboratory equipment.  Second, the Defendant knew or had reason to know that either of the items described was to be used to manufacture a controlled substance, in this case, methamphetamine.  Possession does not necessarily mean ownership.  Possession means that either the person has actual physical control of the substance, as I do the pen I'm now holding, or the person has the right to control the substance even though it is in a different room or place.  Possession may be sole where one person alone possesses the substance.  Possession may be joint where two or more people each share possession.

It is not enough if the Defendant merely knew about the substance.  The Defendant possessed the substance only if he had control of it or the right to control it, either alone or together with someone else.

(Trial Tr. II, ECF No. 11-5, PageID.669-670.)

With the exception of the testimony of Officer Martin, the evidence regarding Petitioner's relationship to the "meth lab" was circumstantial.  The "meth lab" was recently initiated when the police stopped the truck. It required frequent and consistent attention.  It had a distinctive and unavoidable odor.  It was found on the floor of the truck on the passenger side.  Petitioner was sitting on the passenger side of the truck.  That circumstantial evidence alone was perhaps sufficient to find beyond a reasonable doubt that Petitioner had possession of the "meth lab."  The testimony of Officer Martin, however, eliminates any doubt as to the sufficiency of the evidence.  Officer Martin testified that Petitioner confessed that the "meth lab" belonged to Petitioner.

Any suggestion by Petitioner that the evidence of possession was insufficient depends on his conclusion that Officer Martin's testimony was not credible.

28

Petitioner, therefore, asks this Court to do that which it cannot: assess the credibility of witnesses as part of the *Jackson* analysis.  *Herrera*, 506 U.S. at 401-02.

Petitioner has failed to show that the Michigan Court of Appeals implicit rejection of his sufficiency-of-the-evidence challenge is contrary to, or an unreasonable application of, *Jackson v. Virginia*, the clearly established federal law regarding sufficiency of the evidence.  Accordingly, Petitioner is not entitled to habeas relief.

## IV.    Withholding favorable evidence

Petitioner contends that the prosecutor withheld favorable evidence in the form of a witness, Officer McCall, who had written in his police report that the "meth lab" was found on the driver's side of the vehicle.  Petitioner raised this issue in the Michigan Supreme Court for the first time.  (Appl. for Leave to Appeal, ECF No. 11-14, PageID.957.)  When he raised it again in his motion for relief from judgment, the trial court refused to consider it because Petitioner had failed to raise it in the Michigan Court of Appeals on direct appeal and had not shown cause for that failure. Petitioner likewise has not shown cause for that failure in this court; accordingly, the issue is procedurally defaulted.

## V.    The pseudoephedrine database redux

Petitioner raised the pseudoephedrine database issue in the Michigan Court of Appeals as grounds for a new trial, not as grounds for an ineffective assistance of counsel claim as discussed above.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or

laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 67-68; *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  The issue of Petitioner's entitlement to a new trial under state law is simply not cognizable on habeas review.

Moreover, to the extent the absence of pseudoephedrine database evidence has any federal constitutional implications, the resulting error would be harmless.  On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *See Hargrave v. McKee*, 248 F. App'x 718, 728 (6th Cir. 2007) (citing *Fry v. Pliler*, 551 U.S. 112, 120-21 (2007)); s*ee also Vasquez v Jones*, 496 F.3d 564, 574-75 (6th Cir. 2007).  The *Brecht* standard requires the Court to consider whether the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638.

The state appellate court's conclusion that the pseudoephedrine database evidence is irrelevant to Petitioner's conviction is well-grounded in the record.  The fact that there was no record that Petitioner had purchased or attempted to purchase pseudoephedrine has no bearing on the elements of the crime of which he was

convicted.  *See* § III above.  Therefore, if the absence of the pseudoephedrine database evidence from Petitioner's defense was constitutional error, it was harmless.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, where a claim is denied on the merits, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*  I find that reasonable jurists would not

conclude that this Court's denial of Petitioner's claims on the merits is debatable or wrong.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Both showings must be made to warrant the grant of a certificate. *Id.* The Court finds that reasonable jurists could not debate that this court correctly dismissed Petitioner's claims on the grounds of procedural default. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  February 8, 2018                      /s/ Phillip J. Green
                                              Phillip J. Green
                                              United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).